UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL DOCKET |
| VERSUS | * | NO. 21-081 |
| DANIEL INWEREGBU | * | SECTION: "G" |

**DEFENDANT'S SENTENCING MEMORANDUM**

NOW INTO COURT, through undersigned counsel, comes the defendant, Daniel Inweregbu, who respectfully submits this memorandum in anticipation of his sentencing hearing on December 4, 2025, before this Honorable Court.

**I.      Introduction**

Federal sentencing has long been guided by the principle that "the punishment should fit the offender and not merely the crime." *Pepper v. United States*, 562 U.S. 476, 487 (2011). To that end, sentencing judges are required to conduct individualized assessments and consider all the § 3553(a) factors to determine a sentence that will achieve the statutory sentencing goals of just punishment, deterrence, public protection, and rehabilitation for the specific person being sentenced. See *Gall v. United States*, 552 U.S. 38, 50 (2007).

On December 4, 2025, Daniel Inweregbu will stand before the Court remorseful, humbled, and transformed by nearly three years of continuous custody across three countries. He accepts full responsibility for his conduct, recognizes the harm caused to the identified victims, and does not seek to diminish the seriousness of the offense.

However, § 3553(a) requires more than simply punishment fitting the crime. It requires proportionality, fairness, and a realistic assessment of the deterrent, punitive, and rehabilitative

1

effect of what has already occurred. As demonstrated below, a bottom of the guidelines sentence of 27 months is sufficient but no greater than necessary to serve the statutory purposes here.

## II.    Procedural History

On October 6, 2020, the government drafted a federal complaint and issued an arrest warrant for Nigerian national Daniel Inweregbu for his part in a fraud scheme occurring between 2017-2018, involving victims in the United States. See R. Docs. 1, 2. On August 12, 2020, Mr. Inweregbu, who was still living in Nigeria at the time, appeared at the Office of the Economic and Financial Crimes Commission ("EFCC") in Lagos after realizing that his bank account had been frozen. See Def. Ex. A. Upon his arrival, he was detained by Nigerian authorities and subsequently charged with the crimes contained in the government's complaint and arrest warrant that had been filed in Eastern District of Louisiana. *Id*.; See Def. Ex. B. He remained in Nigerian custody for approximately four months pending the disposition of his case. See Def. Ex. A.

On December 4, 2020, Mr. Inweregbu pled guilty to five counts contained in an amended bill of information filed by the prosecutors in Nigeria, and the Court sentenced him to a term of imprisonment of 18 months or a fine of 100,000 Nigerian Naira. See Def. Ex. C. Additionally, he was ordered to pay $15,000 in restitution to the victims in the United States. *Id*. Following his payment of the fine, he was released from Nigerian custody on December 5, 2020.

In the wake of his conviction in Nigeria, Mr. Inweregbu and his family endured a period of uncertainty and insecurity. Both Mr. Inweregbu and his wife lost their jobs, likely due to the stain of his conviction and the resulting damage done to their reputations. In 2023, Mr. Inweregbu determined to relocate with his family to the United Kingdom ("UK"), where his wife had found an employment opportunity. See PSR ¶'s 55-56. Prior to his departure from Nigeria, he contacted the EFCC and requested permission to travel, noting the disposition of his criminal case. See Def.

Ex. D. However, unbeknownst to Mr. Inweregbu, an indictment remained pending in the Eastern District of Louisiana stemming from the same offense conduct that did underlay his prosecution in Nigeria. See R. Doc. 7; Def. Ex. B. Moreover, an INTERPOL Red Notice was issued authorizing his arrest in the UK and Europe. See Def. Ex. E.

On September 21, 2023, upon landing at Manchester Airport in the UK, he was arrested pursuant to that Red Notice and detained while his extradition to the United States was litigated. See Def. Ex. A. He remained detained in the United Kingdom for nearly twenty-two months. See Def. Ex. F. During this time, he was separated from his wife and young children, who struggled with housing, employment interruptions, and prolonged uncertainty about when or whether they would see him again. See Def. Ex G.

After the U.S. Department of Justice certified the extradition request, Mr. Inweregbu ultimately consented to his removal for prosecution in the United States, and he arrived in the Eastern District of Louisiana on August 1, 2025. See R. Doc. 28. Following his initial appearance before the Magistrate Judge, he stipulated to detention and was remanded to custody at Plaquemines Parish Detention Center, where he has remained pending the disposition of this case. See R. Doc. 31; PSR ¶ 57.

On August 21, 2025, Mr. Inweregbu pled guilty to Counts 1 and 12 of the government's indictment. See R. Docs. 39-41. The Final Presentence Investigation Report ("PSR") prepared by U.S. Probation calculates an advisory guideline range of 27 to 33 months. See PSR ¶ 85. By the time of sentencing, however, Mr. Inweregbu will have already served the equivalent of a guideline sentence in pretrial custody in connection with the offenses of conviction.

III.    **A Bottom-of-the-Guidelines Sentence is Warranted**

The offense conduct here involves Mr. Inweregbu's participation in a scheme that misled vulnerable individuals into believing they had formed genuine emotional relationships with a fictitious persona, prompting them to send funds under false pretenses. He recognizes that these victims experienced real emotional injury in addition to financial loss, and he has consistently expressed remorse for the harm his actions caused. That remorse has been evident throughout undersigned's counsel representation and will be made clear to the Court in his allocution.

Before this offense, however, Mr. Inweregbu lived a law-abiding life. He had never been arrested or charged with any crime other than those stemming from the instant offenses. See PSR ¶ 46. He is a forty-year-old, university-educated husband and father who had long served as the primary financial and emotional support for his wife and two young sons. See PSR ¶'s 50–55. His family's stability collapsed with his arrest in Nigeria in 2020. His wife lost her high-paying government job, and the family ultimately relocated to the United Kingdom in hopes of rebuilding. See PSR ¶57. That hope was short-lived, as he was arrested the moment he entered the country.

The Court is also presented with an unusual and uniquely punitive custodial history in this case. Mr. Inweregbu has not spent his pretrial custody in a single facility or even a single nation. Instead, he has spent roughly 30 months detained (including the last 26 months continuously) directly related to the offenses of conviction here, including: approximately four months in Nigeria (August 2020 to December 2020), nearly twenty-two months in the United Kingdom awaiting extradition (September 2023 to July 30, 2025), and four additional months in U.S. pretrial custody since his arrival on July 31, 2025. See PSR ¶ 57. These periods were divided by years in which he lived in a constant state of uncertainty, unable to work steadily, support his family, or plan a future.

That prolonged instability—and the repeated tearing away from his wife and young sons that followed—has become the most punishing and transformative consequence of his conduct.

The effect on his family has been profound. Once a daily presence in his children's lives, Mr. Inweregbu now communicates with them only through intermittent emails because the family often cannot afford the jail's video-communication system. PSR ¶56. He has missed birthdays, graduations, illnesses, and the ordinary rhythms of raising his young children. He accepts, without qualification, that this separation is the direct result of his own choices. His remorse extends not only to the victims of the offense but also to the suffering and dislocation he has inflicted on his own family. See PSR ¶55.

A sentence of 27 months, at the bottom of the advisory guideline range, appropriately accounts for the seriousness of the offense while recognizing the meaningful punishment he has already endured. Mr. Inweregbu has effectively served a guideline sentence through the last 26 months of detention arising from this case. Additional incarceration would not meaningfully increase deterrence, promote respect for the law, or protect the public, particularly given his lack of any criminal history, and the fact that he will not remain in the United States after sentencing, considering his lack of valid status.

Moreover, a 27-month sentence with specific recognition of his pre-extradition custody period in the Court's Judgement, will avoid unnecessary administrative complications following the disposition of this case. Under 18 U.S.C. §§ 3585(b) and 4105(a), Mr. Inweregbu is entitled to time-served credit for the approximately 22 months he spent detained in the UK from September 21, 2023, until July 31, 2025, solely because of the United States' extradition request relating to these offenses, as that period of custody that will not be credited toward any other sentence.[1]

---

[1] Credit for a defendant's service of a term of imprisonment is governed by 18 U.S.C. 3585(b), which states: "A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official

Ensuring this is properly reflected in the judgment will reduce the risk of calculation errors by the Bureau of Prisons and will allow Mr. Inweregbu to move promptly into ICE custody to begin removal proceedings following the completion of his sentence of imprisonment here.

For these reasons, including Mr. Inweregbu's demonstrated remorse, his lack of criminal history, the extraordinary personal punishment already borne, the statutory objectives of sentencing, and the need for an administratively workable outcome, a 27-month sentence is both just and sufficient under 18 U.S.C. § 3553(a).

**Conclusion**

The defendant respectfully avers that a bottom-of-the-guidelines sentence of twenty-seven (27) months is sufficient but no greater than necessary to reflect the seriousness of the offense, promote respect for the law, and provide just punishment, while avoiding unnecessary administrative delay and permitting prompt removal proceedings. See 18 U.S.C. §3553(a).

Respectfully submitted,

/s/Warner B. Thompson
WARNER B. THOMPSON
Warner B. Thompson, Attorney, LLC
3524 Canal Street
New Orleans, Louisiana 70119
Telephone: (504) 588-1110
Bar # 38914
e-mail: warnerbthompsonlaw@outlook.com

---

detention prior to the date the sentence commences—(1) as a result of the offense for which the sentence was imposed ... that has not been credited against another sentence." Moreover, 18 U.S.C. § 4105(a)–(b) provides that "an offender serving a sentence of imprisonment in a foreign country transferred to the custody of the Attorney General ... shall be given credit toward service of the sentence for any days ... spent in custody in connection with the offense ..." Courts have credited defendants for time served in a foreign jurisdiction pending extradition to the United States under 18 U.S.C. § 3585(b). *United States v. Broyles*, 2024 WL 4294148 at *1 (W.D. Nc. Sept. 24, 2024) (citing, e.g., *Hughes v. Slade*, 347 F. Supp. 2d 821, 825 (C.D. Cal. 2004) (crediting defendant for time served in Mexico).

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a that a true and correct copy of the foregoing document has been filed with the Clerk of the Court by using the CM/ECF System which will send a notice of electronic filing to all counsel of record on this 30th day of November, 2025.


<u>/s/ Warner B. Thompson</u>
WARNER B. THOMPSON